UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO.: 05 CV 40071-FDS

```
*********************************)
CHRISTIAN SCHWENK,              )
              Plaintiff        )
                               )
v.                             )
                               )
AUBURN SPORTSPLEX, LLC, DENNIS )
NATOLI, JOHN NATOLI, and PETER )
NATOLI,                        )
              Defendants       )
*********************************
```

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 in that this action involves, among other statutes, the securities laws of the United States; and pursuant to 28 U.S.C. Section 1332 in that this case also involves citizens of different states and an amount in controversy of more than $75,000.00.

2. Venue is proper in this district pursuant to 15 U.S.C. Section 78aa and pursuant to 28 U.S.C. Section 1391 because certain of the transactions, acts, practices and courses of conduct constituting violations of the laws alleged occurred within this district and because defendants reside in and transact business in this district.

## SUMMARY

3. This case involves the defendants' offer and sale, through interstate commerce, of securities in a private limited liability corporation, Auburn Sportsplex, LLC (hereinafter, "Auburn").

4. Beginning on or about the second week of June, 2003 and continuing thereafter, the defendants made material misrepresentations and/or failed to disclose material facts to the plaintiff, a non-accredited investor, with regard to the offer and sale of securities in Auburn.

5. Said securities were not registered with the U.S. Securities and Exchange Commission or with the Commonwealth of Massachusetts; nor were they exempt from registration.

6. By engaging in the conduct alleged in this Amended Complaint, the defendants have violated the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. Section 78j(b) and the regulations promulgated thereunder.

7. Moreover, by engaging in the conduct alleged in this Amended Complaint, the defendants have breached contractual and fiduciary obligations owed to the plaintiff. Further, the individual defendants have violated state law by, among other things, committing unfair and deceptive practices as provided in Massachusetts General Laws Chapter 93A, the Massachusetts Consumer and Business Protection Act and the regulations promulgated thereunder.

## THE PARTIES

8. The Plaintiff, Christian Schwenk ("Schwenk") is a natural person with a permanent residence at 1015 Olive Tree Circle, West Palm Beach, Florida 33413.

9. Upon information and belief, Defendant, Auburn Sportsplex, LLC ("ASP"), is a limited liability company organized under the laws of the Commonwealth of Massachusetts on or about July 12, 2002 with its main offices located at 5 Saint Mark Street, Auburn, Massachusetts.

10. Upon information and belief, Defendant, Dennis Natoli is a natural person with a permanent residence at 370 South Street, Auburn, Massachusetts.

11. Upon information and belief, Defendant, John Natoli is a natural person, has a permanent residence at 13 Gilbert Way in Millbury, Massachusetts.

12. Upon information and belief, Defendant, Peter Natoli, is a natural person with a permanent residence at 406 Treasure Island, Webster, Massachusetts.

13. Plaintiff is not, nor has he ever been at any time material to this action, an accredited investor as that term is defined by the rules administered by the U.S. Securities and Exchange Commission; nor has plaintiff been, at any time material to this action, a sophisticated investor who, with any degree of regularity, provided substantial funds to others with the expectation that through the efforts of the recipients of the investment funds, plaintiff would obtain significant monies as a result of the efforts of the recipients of said funds.

## FACTUAL ALLEGATIONS

14. Auburn is a limited liability company organized under the laws of the Commonwealth of Massachusetts on or about July 12, 2002.

15. The Certificate of Organization filed with the Office of the Massachusetts Secretary of State on or about July 12, 2002 named Defendant, Peter Natoli as the sole manager of

Auburn.  This Certificate also named Defendant Peter Natoli as the resident agent for
Auburn for purposes of service of process.

16. According to Paragraph 4 of the Certificate of Organization, "[t]he general character of
the business of the LLC [Auburn] is to engage in: investment in, and ownership and
development of, real estate and interests therein, including buying, acquiring, owning,
operating, selling, financing, refinancing, disposing of and otherwise dealing with
interests in real estate, either directly or indirectly through joint ventures, partnerships or
other entities; and to engage in any activities directly or indirectly related or incidental
thereto."

17. At all times pertinent to this case, Auburn maintained its principal place of business at 5
St. Mark Street, Auburn, MA 01501.

18. At all times pertinent to this case, the individual defendants each owned substantial
percentages of Auburn.

19. The individual defendants are all related to one another as they are brothers within the
same family, one to another.  Based on the foregoing, the individual defendants constitute
a "control group" as that term is interpreted under the securities laws of the United States.

20. The individual defendants regularly consulted with one another concerning, among other
things, Auburn's operations and the financial standing of Auburn

21. On or about December 18, 2002, the Defendant Auburn entered into a loan agreement
(hereinafter the "Loan Agreement") in the amount of $950,000 with North Brookfield
Savings Bank (hereinafter "NBSB").

22. Attendant to the Loan Agreement with NBSB, was a note executed on or about December 18, 2002 which, among other things, obligated each of the individual defendants to pay the loan amount.

23. Attendant to the Loan Agreement with NBSB, was an unlimited guaranty executed on or about December 18, 2002 which, among other things, provided NBSB with a continuing lien and security interest in all deposits or other sums at any time credited by or due from NBSB with regard to Auburn.

24. Attendant to the Loan Agreement with NBSB, was a security agreement executed on or about December 18, 2002, which, among other things, included an irrevocable and unconditional assignment to NBSB of all of Auburn's rights and benefits in all amounts owed Auburn with respect to the use of or occupancy of the property at which Auburn conducted business.

25. On or about June 23, 2003, plaintiff received a package of information at his residence in Florida from one or more of the individual defendants concerning an investment opportunity in a sports facility located in Auburn, Massachusetts.

26. One of more of the individual defendants arranged for the transmittal of the documentation concerning Auburn referred to in the preceding paragraph from Massachusetts to plaintiff through the mails or via some other instrumentality of interstate commerce.

27. The documentation referred to in paragraphs 22 and 23 above included, among other things, an undated letter on Auburn letterhead signed by Defendant John Natoli which contained the following statement: "This investment is protected by real estate and it

should give you a return from 18% to 30%." A copy of this letter is attached hereto and incorporated by reference herein as Exhibit A.

28. The documentation referred to in paragraphs 22-24, above, did not include a copy of the NBSB loan, or any of the documents attendant thereto, referred to in paragraphs 17-20, above.

29. In reliance on the various written and oral representations made by the defendants, on or about July 21, 2003, plaintiff arranged for the wire transfer of $100,000 from plaintiff's account at Washington Mutual Bank to an account Auburn maintained at Sovereign Bank.

30. Upon information and belief, the Auburn account at Sovereign Bank referred to in the preceding paragraph was in conflict with the specific terms of the NBSB loan agreement placing Auburn at risk of default.

31. On or about July 30, 2003, the individual named defendants held a meeting at which, among other things, defendant John Natoli presented "an employment contract for operating the sportsplex". A copy of the minutes of said meeting is attached hereto and incorporated by reference herein as Exhibit B.

32. The "employment contract" referred to in the preceding paragraph included, among other terms, that defendant John Natoli would "[m]anage all functions, sales, employment, maintenance, scheduling, advertising, accounting and future growth decisions" for Auburn. A copy of said "employment contract" entitled "Independent Contractor Agreement" dated August 1, 2003 between Auburn and defendant John Natoli is attached hereto and incorporated by reference herein as Exhibit C.

33. The August 1, 2003 agreement referenced in the preceding paragraph provided, among other things, for Auburn to pay defendant John Natoli $3,000 per month plus $400 per month for medical insurance and $400 per month as an automobile allowance.

34. At the meeting of July 30, 2003 referred to in paragraph 30, the individual defendants agreed by a vote of 3-0 to approve the August 1, 2003 agreement (Exhibit C) between defendant John Natoli and Auburn.

35. At no time relevant to this action did defendants provide plaintiff with a copy of the minutes of the July 30, 2003 meeting (Exhibit B), nor did defendants provide plaintiff with a copy of the August 1, 2003 agreement (Exhibit C) between Auburn and defendant John Natoli.

36. On or about August 20, 2003, Plaintiff executed a document entitled "Ownership Purchase Agreement" (hereinafter "the Agreement").   The Agreement was also signed by Defendants John V. Natoli, Peter Natoli and Dennis Natoli.  Said signing occurred in Auburn, Massachusetts.

37. The Agreement referred to in the preceding paragraph (attached hereto and incorporated by reference herein as Exhibit D) stated, among other things, "the Seller shall sell to the Purchaser this document that certifies investment ownership of Five percent of Corporation in consideration of the purchase price set forth in this Agreement. This certificate representing ownership of Five Percent of all Assets, Net Profits and any Beneficial entities of the Corporation, shall be duly endorsed and accompanied by appropriate signatures of transfer powers duly executed in blank . . . . "

38. At no time material to this action did the plaintiff receive a certificate related to plaintiff's investment in Auburn as identified in the preceding paragraph.

39. In a letter dated April 16, 2004 and sent postage prepaid, certified, to Defendants Peter Natoli and John Natoli, plaintiff: (a) asked the aforementioned defendants for information regarding the operation of Auburn; (b) reminded said defendants of plaintiff's need for monthly dividend income payments following a 6 month period; and (c) referenced plaintiff's intent to exercise the refund provision of the Ownership Purchase Agreement.

40. In a letter dated August 19, 2004 and sent postage prepaid, certified, to defendant Peter Natoli, plaintiff, through the undersigned counsel, requested access to pertinent documentation concerning the Auburn operation and its financial condition.

41. Despite representations to the contrary, plaintiff was continually denied access to the documentation referred to in the preceding paragraph in contravention of M.G.L. c. 156c.

42. In correspondence dated December 9, 2004, plaintiff, through the undersigned counsel, made a demand pursuant to M.G.L c 93A by sending a letter postage prepaid, certified, to defendants Peter Natoli and John Natoli.

43. Defendants failed to respond to the 93A demand letter referenced in the preceding paragraph.

44. Plaintiff filed the subject action on May 11, 2005.

45. Despite repeated requests made of Defendants, plaintiff did not receive any documentation prior to filing the subject action, but for two forms related to 2003 tax returns prepared by Auburn's accountant in March, 2005.

## COUNT I
## VIOLATION OF FEDERAL SECURITIES LAWS:
## MISREPRESENTATIONS, OMISSIONS AND DECEPTIVE PRACTICES

46. Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-44, above.

47. Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, with scienter, knowingly, willingly and/or recklessly:

    a.   Employed devices, schemes or artifices to defraud;

    b.   Made untrue statements of material fact or omitted to state a material fact(s)necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c.   Engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons; in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

48. Plaintiff relied on defendants' untrue statements of material fact, detailed above, when purchasing Auburn securities.

49. Plaintiff's reliance on defendants' untrue statements of material fact detailed above as well as defendants' omissions, unlawful acts and course of business resulted directly in plaintiff's financial loss.

50. By reason of the foregoing, defendants violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. Section 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. Section 240.10b-5.

## COUNT II
## BREACH OF CONTRACT

51. Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-49, above.

**52.** On August 20, 2003, the parties to this action implemented the terms of the Agreement at a closing.

**53.** Pursuant to terms of the Agreement, Exhibit A, par.(c), the parties agreed "Refund of Payment. If for any reason within the first twelve months of this agreement , the Purchaser decides to sell his ownership of the Corporation, a notice in writing to Sellers only, the sellers will refund Purchasers, within and no longer than Ninety Days of such delivered notice."

**54.** On August 19, 2004, Plaintiff exercised the buyback option by letter of same date, copy of which is attached as Exhibit E.

**55.** Defendants have failed and refused to buyback Plaintiff's shares in accordance with the agreement, and therefore breached the contract.

56. As a direct and proximate result, Plaintiff has been deprived of the return of his investment in the amount of $100,000.00, and has been deprived of the use of his money.

## COUNT III
## BREACH OF FIDUCIARY DUTY

57. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-44, above.

58. Actions taken, or not taken by defendants in, among other things, not filing annual reports with the Office of the Secretary of State, Commonwealth of Massachusetts, not filing state and federal tax returns on a timely basis, failing to properly hold annual meetings, failure to disclose material facts related to Auburn's financial condition and all obligations that were material to Auburn's business, were intended and had the affect of depriving plaintiff of relevant and necessary information with which plaintiff could

monitor his investment.

59. Defendants' promises, affirmations and representations were, at the time they were made to plaintiff, incomplete, untrue and/or devoid of relevant and material information.

60. Defendants owed plaintiff a duty to act in good faith and with due regard for plaintiff's Interests.

61. Defendants failed to act in good faith and with due regard to plaintiff's interest, thereby breaching their fiduciary obligation.

62. As a result of the aforementioned breach of fiduciary duties, plaintiff lost the right to participate in Auburn's decision making process and other incidental benefits to which plaintiff was entitled.

63. Defendants are liable to plaintiff as a result of their breach of fiduciary duties and minority freeze out.

64. As a result of the foregoing, plaintiff has been damaged in the amount of $100,000.00 plus interest, plus attorneys' fees.

## COUNT IV
## TORT: CONSPIRACY

65. Plaintiff realleges and restates paragraphs 1 through 63, above, in their entirety.

66. Defendants combined together and entered in a plan to offer and sell plaintiff personal property, i.e., an interest in Auburn, a limited liability company, by deceit or fraud.

67. Defendants hid the true facts regarding the performance of Auburn, its financial condition, the propriety of its actions and the manner in which it was operated.

68. Defendants combined to, among other things, deprive plaintiff of relevant information, information to which plaintiff was entitled as a matter of law.

69. Defendants' conduct was a combination entered into for an unlawful purpose; it was carried out through unlawful means and it violated M.G.L. c. 231, Section 85J.

70. Defendants' actions were the proximate cause of plaintiff's damages.

71. As a result of the foregoing, plaintiff has been damaged in the amount of actual damages of $100,000, plus loss of interest, plus reasonable attorneys' fees, plus treble damages as provided by M.G.L. c. 231, Section 85J.

### COUNT V
### VIOLATION OF MGL CHAPTER 93A

72. Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 70 , above.

73. At all time relevant hereto, defendants were engaged in trade or commerce within the meaning of M.G.L. c. 93A.

74. Defendants misrepresentations and failure to disclose relevant facts as set forth above were unfair and deceptive trade practices which were material, which were undertaken willfully and knowingly, and which caused proximate damage to plaintiff in violation of M.G.L. c 93A and Code of MA Reg, Att'y General 3:16.

75. Defendants failed to make a reasonable offer of settlement to plaintiff as required by M.G.L. c. 93A.

76. As a result of the foregoing, plaintiff has been damaged in the amount of $100,000, plus multiple damages and attorneys fees.

## COUNT VI
## APPOINTMENT OF RECEIVER

77..Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 75 above.

78. Since it began operations as a sports facility, Auburn has generated and continues to generate a significant amount of revenue upon the receipt of fees paid by members of the public who have utilized Auburn's facilities.

79. Upon information and belief, much of the revenue Auburn has generated and continues to generate has been as the result of monies obtained in the form of cash or personal check(s) and/or credit payments made by those who have used the Auburn facilities.

80. Upon information and belief, there are serious and continuing deficiencies in Auburn's system of creating and maintaining its books and accounts by Auburn, its control group, its agents and contractors. These deficiencies call into question the validity of the financial standing of Auburn and various receipts and expenditures noted in the Auburn books and records, as well as the validity of the federal and state tax returns that have been previously prepared and/or filed by or on behalf of Auburn.

81. Upon information and belief, defendants have been engaged in conduct which has prejudicially affected the business purposes and standing of Auburn.

82. As a result of the foregoing, plaintiff has suffered economic injury.

83. As a result of the foregoing, there is no adequate remedy at law to redress the damages Plaintiff has suffered and this Court should appoint a receiver.

WHEREFORE, Christian Schwenk demands judgment of the Defendants in the amount of his damages, together with interest, costs, attorney fees, and to award such other and further

relief to plaintiff as this Court deems just and equitable, including, as applicable, and award of multiple damages.

Plaintiff, Christian Schwenk, Demands Trial By Jury On All Issues Triable to a Jury

Plaintiff,
By his attorney,

Douglas L. Fox, Esq
BBO#:    176380.
Shumway, Giguere & Fox, PC
19 Cedar Street
Worcester, MA  01609
(508) 756-2323

# EXHIBIT A



*Peter Call*
*508-330-4420*
*HSE 508-949-9309*

Dear Chris.

How are you? I hope all is now starting to go well for you. As you know we are in the final stages of our sport dome. I'm happy to hear you are interested in investing in the SportsPlex. Just as we invested in our building that abuts the dome, it is all friends and family and was one of the best investments all the partners have made. The same stands for this project. The bank appraisal without equipment was $1.7 million. This will only grow as the success begins when we open. We have been characterized by the media as the largest and utimate professional training facility in New England. And they are right! This investment is protected by real estate and it should give you a return from 18% to 30%. We could of had other investors, but the people I know with serious money are not interested in receiving part of their profits in CASH. This is something that you have to use your cash profits to spend and not put in a bank, in order to protect all of us. I hope you understand this. I'm tired of paying big bucks to Uncle Sam! I hope you can come out and see, feel and touch this project. We have plans for a second and have bank approval after we show a positive cash flow. You will be part of that also. As you know, we had a terrible winter, which has caused overruns in our estimates of cost and delayed opening and deleted projected earnings. Your investment will help complete our project. We have a phonominal staff, with professional athletes in Baseball, football and soccer. College coaches in the same sports, plus softball, LaCross, cheerleading and Golf. We also have a health center on the second level, that will give a constant cash flow due to membership. We have been asked to host dog agility shows, they pay as much as $12,000.00 for a Sunday. Our baseball Academy is state of the art. Our college placement, which will start with our Pre-School programs has a response of over 200 colleges. Professional scouts are going to host showcases for New England Prospects.

Enclosed is a summary business plan, of what the bank approved, with pictures of what the dome looks like. I wish I had something like this when I grew up. If you have any questions my cell is 774-696-2211.

Hope to see you soon.

John

# Auburn Sportsplex LLC

## Minutes

### July 30 2003 6pm

The meeting was called to order with all Stockholders present (Peter Natoli, Dennis Natoli and John Natoli).

Peter Natoli presented a sale of a John Deer Back hoe that would save money on construction and could also be used for snow removal. A 3-0 vote to try to purchase such vehicle.

John Natoli presented an employment contract for operating the Sportsplex (see Attachment). Contract was agreed on voted 3-0.

It was agreed that Pro-Batter would be the pitching machines used at the sportsplex and decided to purchase instead of Leasing. Vote 3-0.

Peter said after reviewing several different Turf Companies that Pro-Green is what we should use. Voted 3-0.

Meeting was adjourned at 8pm.

Secty.

_John Natoli_

# EXHIBIT
# C

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is made and effective this August 1, 2003, by and between john natoli ("Consultant") and Auburn SportsPlex ("Company").

Now, therefore, Consultant and Company agree as follows:

## 1. Engagement.

Company hereby engages Consultant, and Consultant accepts engagement, to provide to Company the following services:

Manage all functions, sales, employment, maintenance, scheduling, advertising, accounting and future growth decisions.

## 2. Term.

Consultant shall provide services to Company pursuant to this Agreement for a term commencing on August 1, 2003 and ending on July 31, 2006.

## 3. Place of Work.

Consultant shall render services primarily at Consultant's offices, but will, upon request, provide the services at Company offices or such other places as reasonably requested by Company as appropriate for the performance of particular services.

## 4. Time.

Consultant's daily schedule and hours worked under this Agreement on a given day shall generally be subject to Consultant's discretion, provided that Consultant and Company anticipate that Consultant shall work on average forty hours per week in the performance of services pursuant to this Agreement. Company relies upon Consultant to devote sufficient time as is reasonably necessary to fulfill the spirit and purpose of this Agreement.

## 5. Payment.

Company shall pay Consultant three thousand dollars per month plus four hundred dollars per month for medical insurance and four hundred dollars per month for automobile allowance. for services performed pursuant to this Agreement. Payment shall be made monthly . Consultant shall bear all of Consultant's expenses incurred in the performance of this Agreement.

## 6. Covenant Not to Compete.

During the term of this Agreement and for a period of 1 year thereafter, Consultant shall not within 5 mile radius, directly or indirectly, either for his own account, or as a partner, shareholder, officer, director, employee, agent or otherwise; own, manage, operate, control, be employed by, participate in, consult with, perform services for, or otherwise be connected with any business the same as or similar to the business conducted by Company. In the event any of the provisions of this Section 6 are determined to be invalid by reason

of their scope or duration, this Section 6 shall be deemed modified to the extent required to cure the invalidity. In the event of a breach, or a threatened breach, of this Section 6 Company shall be entitled to obtain an injunction restraining the commitments or continuance of the breach, as well as any other legal or equitable remedies permitted by law.

## 7. Confidentiality

During the term of this Agreement, and thereafter for a period of two(2) years, Consultant shall not, without the prior written consent of Company disclose to anyone any Confidential Information. "Confidential Information" for the purposes of this Agreement shall include Company's proprietary and confidential information such as, but not limited to, customer lists, business plans, marketing plans, financial information, designs, drawing, specifications, models, software, source codes and object codes. Confidential Information shall not include any information that:

    A.  is disclosed by Company without restriction;

    B.  becomes publicly available through no act of Consultant;

    C.  is rightfully received by Consultant from a third party.

## 8. Termination

A.  This Agreement may be terminated by Company as follows:

    i.     If Consultant is unable to provide the consulting services by reason of temporary or permanent illness, disability, incapacity or death.

    ii.    Breach or default of any obligation of Consultant pursuant to Section 6, Covenant Not to Compete, or Section 7, Confidentiality, of this Agreement.

    iii.   Breach or default by Consultant of any other material obligation in this Agreement, which breach or default is not cured within five (5) days of written notice from Company.

B.  Consultant may terminate this Agreement as follows:

    i.     Breach or default of any material obligation of Company, which breach or default is not cured within five (5) days of written notice from Consultant.

    ii.    If Company files protection under the federal bankruptcy laws, or any bankruptcy petition or petition for receiver is commenced by a third party against Company, any of the foregoing of which remains undismissed for a period of sixty (60) days.

## 9. Independent Contractor

Consultant is and throughout this Agreement shall be an independent contractor and not an employee, partner or agent of Company. Consultant shall not be entitled to nor receive any benefit normally provided to Company's employees such as, but not limited to, vacation payment, retirement, health care or sick pay. Company shall not be responsible for withholding income or other taxes from the payments made to Consultant. Consultant shall be solely responsible for filing all returns and paying any income, social security or other tax levied upon or determined with respect to the payments made to Consultant pursuant to this Agreement.

## 10. Tools and Supplies

Unless otherwise agreed to by Company in advance, Consultant shall be solely responsible for procuring, paying for and maintaining any computer equipment, software, paper, tools or supplies necessary or appropriate for the performance of Consultant's services hereunder.

## 11. Controlling Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Massachusetts.

## 12. Headings

The headings in this Agreement are inserted for convenience only and shall not be used to define, limit or describe the scope of this Agreement or any of the obligations herein.

## 13. Final Agreement

This Agreement constitutes the final understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations, understandings and agreements between the parties, whether written or oral. This Agreement may be amended, supplemented or changed only by an agreement in writing signed by both of the parties.

## 14. Notices

Any notice required to be given or otherwise given pursuant to this Agreement shall be in writing and shall be hand delivered, mailed by certified mail, return receipt requested or sent by recognized overnight courier service as follows:

> If to Consultant:
> john natoli
> **13 Gilber Way, Millbury, Ma  01527**
>
> If to Company:
> Auburn SportsPlex
> 5 Saint Mark St, Auburn, MA

## 15. Severability

If any term of this Agreement is held by a court of competent jurisdiction to be invalid or

unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

IN WITNESS WHEREOF, this Agreement has been executed by the parties as of the date first above written.

Auburn SportsPlex

_____
john natoli

By: _____
**Peter Natoli**
**President**

# EXHIBIT
# D

# OWNERSHIP PURCHASE AGREEMENT

THIS AGREEMENT is made and entered into this 23 day of june, 2003, by and between John, Peter & Dennis Natoli, ("Seller") and Christopher B Schwink. ("Purchaser"):

WHEREAS, the Seller is the record owners of Auburn SportsPlex LLC, ("Corporation"), a Massachusetts corporation; and

WHEREAS, the Purchaser desires to purchase Five Percent ownership of Auburn SportsPlex LLC and the Seller desires to sell Five percent of ownership, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the investment into the Corporation for Five Percent ownership, it is hereby agreed as follows:

1. PURCHASE AND SALE: Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell to the Purchaser this document that certifies investment ownership of Five percent of Corporation in consideration of the purchase price set forth in this agreement. This certificate representing ownership of Five Percent of all Assets, Net Profits and any Beneficial entities of the Corporation, shall be duly endorsed and accompanied by appropriate signatures of transfer powers duly executed in blank, in either case with signatures guaranteed in the customary fashion, and shall have all the necessary signatures affixed thereto at the expense of the Seller. The closing of the transactions contemplated by this Agreement ("Closing"), shall be held at 5 Saint Mark St, on June 30, 2003 , at 6pm, or such other place, date time as the parties hereto may otherwise agree. ~~T~~ Aug 29, 2003 Jim

2. AMOUNT AND PAYMENT OF PURCHASE PRICE. The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3. REPRESENTATIONS AND WARRANTIES OF SELLER. Seller hereby warrants and represents:

    (a) Organization and Standing. Corporation is a corporation duly organized, validly exhisting and in good standing under the laws of the state of Massachusetts and has the corporate power and authority to carry on its business as it is now being conducted.

    (b) Restrictions of Ownership.
        i. The Seller is not a party to any agreement, written or oral, creating rights in respect to the Corporation in any third person or relating to the voting of the Corporations Powers.
        ii Seller is the lawful owner of the Corporation, free and clear of all security interests, liens, encumbrances, equities and other charges.
        iii There are no existing warrants, options, ownership purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the Corporation.

4. REPRESENTATIONS AND WARRANTIES OF SELLER AND PURCHASER. Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller, Purchaser or the Corporation which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

5. GENERAL PROVISIONS

(a) Entire agreement. This Agreement (including the exhibits hereto and any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

(b) Sections and Other Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

(c) Governing Law. This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Massachusetts. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Worcester County, State of Massachusetts. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written.

Signed, sealed and delivered in the presence of:

By: _____ John V Natoli

By: _____ Peter Natoli

By: _____ Dennis Natoli

By: _____ Christian B Schwenk SS#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

By: _____

EXHIBIT "A"

AMOUNT AND PAYMENT OF PURCHASE PRICE

(a)  Consideration.  As total consideration for the purchase and sale of the Corporation( 5) Five Percent ownership, pursuant to this Agreement, the Purchaser shall pay to the Seller the sum of One Hundred Thousand Dollars ($100,000.00), such total consideration to be referred to in this Agreement as the "Purchase Price".

(b)  Payment.  The Purchase Price shall be paid as follows:

i.  The sum of One Hundred Thousand Dollars ($100,000.00) to be delivered to Seller at Closing, no later than June 30, 2003.

(c) Refund of Payment.  If for any reason within the first twelve months of this agreement, the Purchaser decides to sell his ownership of the Corporation, a notice in writing to Sellers only, the sellers will refund Purchasers, within and no longer than Ninety Days of such delivered notice.

(d)  Liabilities.  The Purchasers Liabilities are limited to the investment of $100,000.00.


By: _____    John V. Natoli

By: _____    Peter Natoli

By: _____    Dennis Natoli

By: _____    Christopher B Schwenk  _Christian B Schwenk_

By: _____

# Law Offices of Paul E. Linet

## A Professional Corporation

Post Office Box 533
Acton, MA 01720-0533

Tel: (978) 264-9600 • Fax: (978) 264-9090 • URL: http://www.linetlaw.com

**August 19, 2004**

Peter Natoli
Auburn Sportsplex, LLC
5 St. Mark Street
Auburn MA 01501

## Demand for Refund of Payment on Behalf of
## <u>Christian Schwenk</u>

Dear Mr. Natoli:

As I informed you during our telephone conversation of August 18, 2004, this firm represents Christian Schwenk, a resident of West Palm Beach, Florida and responds to your request for a written statement concerning the information that Mr. Schwenk has asked this office to obtain from Auburn Sportsplex, LLC ("the LLC").

In connection with Mr. Schwenk's ownership interest in the LLC, this office respectfully requests the opportunity to inspect and copy the following documentation:

1.  A current list of the full name and address of each member of the LLC;
2.  A copy of the Certificate of Organization and any certificates of amendment and annual reports filed with the Commonwealth of Massachusetts subsequent to July 12, 2002;
3.  Copies of the LLC's federal and state income tax returns filed since the LLC's inception;
4.  Copies of any written operating agreements currently in effect;
5.  Copies of all financial statements of the LLC prepared since its inception;
6.  A written statement of the amount of cash and a description and statement of the agreed value of the other property or services contributed by each member of the LLC;
7.  A written statement regarding the right of any member to receive distributions from the LLC.

Under applicable law, the foregoing records are mandated to be kept by the LLC and, upon proper request, are further required to be made available during ordinary business hours. Please provide the undersigned with a convenient time during the next 10 days when the documentation will be available for

**Law Offices**
# Paul E. Linet, P.C.

inspection at the LLC's offices. We shall than make arrangements to review the documentation and make copies, at our expense.

As you know, in a letter dated April 16, 2004 (a copy of that correspondence is enclosed hereto and incorporated by reference herein), Mr. Schwenk stated that he had not received data regarding the operation of the LLC. You will also note in his correspondence dated April 16, 2004, Mr. Schwenk highlighted his concerns and expressed his intent to invoke the refund clause set forth in Exhibit "A" to the Ownership Purchase Agreement (copy enclosed). **THEREFORE, PLEASE TAKE NOTE THAT MR. SCHWENK HEREBY INVOKES CLAUSE (c) "Refund of Payment" and demands refund of his investment. Pursuant to that provision in Exhibit A, we fully expect that the arrangements to sell Mr, Schwenk's ownership interest in the LLC will be completed within ninety days.**

I contacted Auburn Sportsplex, LLC by telephone on August 18, 2004 in an effort to amicably resolve any outstanding issues involving the parties. It is still our expectation that such a resolution may be achieved. In that you requested a written communication identifying the material we currently seek to review, we have complied with your request.

Should you have any questions concerning the substance of this correspondence, please contact the undersigned as soon as possible. We look forward to receiving your response so that we can proceed to rectify any and all open issues.

Sincerely yours,
Law Offices of Paul E. Linet, P.C.
Attorney to Christian Schwenk

By: _____
Paul E. Linet

PEL:lom
Enclosures
Via Overnight Courier
DHL/ABX 5361451141

Copy to: C. Schwenk

## CERTIFICATE OF SERVICE

On this 15th day of December, 2005, I, Douglas L. Fox, Esquire, hereby certify that I served the within *First Amended Complaint and Jury Demand* upon the Defendants, by Facsimile and mailing a copy of the same, first-class mail, postage prepaid, to Defendants' Counsel of Record:

> William J. Ritter, Esq.
> Pojani, Hurley, Ritter & Salvidio, LLP
> 446 Main Street, 21[st] Floor
> Worcester, MA 01608
> Fax:    (508) 797-9561

*DOUGLAS L. FOX, ESQUIRE*
BBO #176380