UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

Civil Action No. 05-40071-FDS

---

CHRISTIAN SCHWENK
     Plaintiff,

v.

AUBURN SPORTSPLEX, LLC,
DENNIS NATOLI, JOHN NATOLI,
AND PETER NATOLI,
     Defendants

---

### AFFIDAVIT OF WILLIAM J. RITTER

1.     My name is William J. Ritter.  I am an attorney duly authorized to practice law in the Commonwealth of Massachusetts.

2.     I am of legal age and have personal knowledge of the facts contained herein.

3.     I represent Auburn Sportsplex, LLC, Dennis Natoli, John Natoli and Peter Natoli in the above referenced matter.

4.     The following documents are attached to this Affidavit at the designated Exhibit letter:

     A.     Plaintiff's Answer to Defendant's Interrogatories;

     B.     Ownership Purchase Agreement; Schwenk Exhibit #4;

     C.     Washington Mutual Bank Wire Transfer Confirmation; Schwenk Exhibit #3;

     D.     Deposition of Christian Schwenk, pp. 1, 45-46;

     E.     Christian Schwenk letter dated April 16, 2004; Schwenk Exhibit #5; and

     F.     Paul E. Linet letter dated August 19, 2004

Signed under the pains and penalties of perjury this 22nd day of June, 2006.

_s/ William J. Ritter_
William J. Ritter, Esquire

### CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2006, I served a copy of the within AFFIDAVIT OF WILLIAM J. RITTER by first class mail postage prepaid upon:

Paul E. Linet, Esquire
Law Offices of Paul E. Linet, P.C.
PO Box 533
Acton, MA  01720

and by electronic filing upon:

Douglas L. Fox, Esquire
Shumway, Giguere & Fox, P.C.
19 Cedar Street
Worcester, MA  01609

_s/ William J. Ritter_
William J. Ritter, Esquire
Natañia M. Davis, Esquire

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO.: 05 CV 40071-FDS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*)
CHRISTIAN SCHWENK,                                  )
               Plaintiff                      )
                                                   )
v.                                                 )
                                                   )
AUBURN SPORTSPLEX, LLC, DENNIS  )
NATOLI, JOHN NATOLI, and PETER     )
NATOLI,                                            )
              Defendants                   )
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S ANSWERS TO
## DEFENDANT'S INTERROGATORIES

1.    Please state your full name, date of birth, social security number, present residence,
      business or occupation, business address, if applicable, and residential address.

ANSWER:

      Christian B. Schwenk, SSN: 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, DOB: 5/14/51, 122 Parkway Court,
      Greenacres, FL 33413; photographer/disabled.

2.    For each and every occasion that you traveled to Auburn or Worcester,
Massachusetts
      regarding the Auburn Sportsplex, LLC state:

      a. the date and time you arrived in Auburn/Worcester;
      b. the date and time you left Auburn/Worcester;
      c. if you stayed overnight state where you stayed, the cost of the room or hotel and
who            or what entity paid the bill.

ANSWER:

I arrived in Boston at approximately 3:24 pm on August 15, 2003, on a flight from West
Palm Beach, Florida. I was met at the airport by Dawn Brennes. She drove me to Auburn/

Worcester that afternoon.  In late, July, 2004, I made another trip to Auburn/Worcester.  I do not presently recollect the day I arrived.

I left Auburn/Worcester early on the morning of August 21, 2003 and was driven to the airport by John Natoli for my return flight to West Palm Beach.  I do not presently recollect the day I left Auburn/Worcester in late July, early August 2004 for the return drive to Florida.

During the period August 15 through August 21, 2003, I stayed at John Natoli's home.  In July, 2004, I stayed at a motel located close to the Sportsplex.  I do not currently recall the cost of the room which was paid for by Peter Natoli.

3.    With respect to the letter from John Natoli attached hereto as Exhibit A, state:

    a.    the date you received Exhibit A; and
    b.    how you received Exhibit A (by mail or fax).

ANSWER:

    Please see answers to Interrogatories 4 and 8.

4.    With respect to the Business Plan attached hereto as Exhibit B, state:

    a.    the date you received Exhibit B; and
    b.    how you received Exhibit B (by mail or fax).

ANSWER:

    a.    June of 2003
    b.    I currently do not recall.

5.    With respect to the Ownership Purchase Agreement (the "Agreement") attached hereto
    as Exhibit C, state:

    a.    the date you signed the second page of the Agreement;
    b.    where you were at the time you signed the second page of the Agreement.
    c.    the date you signed the third page, Exhibit A of the Agreement; and
    d.    where you were at the time you signed the third page, Exhibit A of the
        Agreement.

ANSWER:

    a.    August 20, 2003.
    b.    John Natoli's home;

       c.    August 20, 2003;

       d.    John Natoli's home.

6.     For the handwritten changes on the first page of Exhibit C, state:

       a.    who made the handwritten changes;

       b.    when the handwritten changes were made;

       c.    at what location the changes were made; and

       d.    who was present at the time the changes were made.

ANSWER:

To the best of my recollection, I made the correction to my name appearing in the first
sentence of the document; I corrected the date in Paragraph 1 of the document and initialed
it at the end of that paragraph; John Natoli and Peter Natoli each affixed their initials at the
end of Paragraph 1.
Please see answer to Interrogatory number 5.
John Natoli's home.
To the best of my memory John, Peter, and Peter's wife, Susan were in the home at the
time.

7.     Please identify fully and completely each person whom the Plaintiff expects to call
as an

     expert witness at the trial of the above entitled action by setting forth;

       a.    the name and address of each such expert;

       b.    the qualifications of each such expert;

       c.    the subject matter upon which each such expert is expected to testify;

       d.    the facts and opinions to which each such expert is expected to testify; and

       e.    the grounds for each opinion which each such expert is expected to give.

ANSWER:

     Not yet determined.

8.     With respect to each communication, verbal or written, which Plaintiff, its
representatives

     or agents, had with Auburn Sportsplex, LLC, its agents or representatives regarding
Auburn Sportsplex, state for each communication:

       a.    the date of the communication

       b.    whether the communication was verbal or written;

       c.    the people or persons involved in said communication;

receive 18-30% profit and that my investment was secured by the building that housed the sports facility.

After I received a package of written material regarding the Auburn Sportsplex, Peter explained that they still needed another $50,000.00 and I agreed to provide additional amount. John gave me the wire transfer information.

After I arranged for the transfer of the $100,000 from my account at Washington Mutual, I went to Worcester to see my investment and formally sign the documents.

August, 2003:  I went to Worcester to sign the documents and view the company. I pretty much stayed out of their way. We did not discuss management of the business. I was told of a return of 18-30% and my investment would go to finish the building. The first statement regarding the operation of the business from them should have been in January of 2004 and I was continuously given excuses as to why it hadn't been done.

(iii)    Post August, 2003:   Upon my return to Florida, I placed numerous phone calls to Peter Natoli and John Natoli. I do not presently recollect the dates of these calls.  On those occasions when I did speak to either Peter or John Natoli, I generally asked for updated financial information concerning the status of the sports facility.

At various times, I would be told that the information was with the accountant, or that the information was being prepared in order that tax returns could be completed and that the financial information and was not available. I regularly reminded Peter and John that I was not in a position financially to forego a return on the investment.

Often, I would leave messages for Peter Natoli on his voice message machine asking for return calls.  These requests were, in general, not returned and, in April, 2004, I felt compelled to send a certified letter expressing my displeasure in, among other things, the lack of communication and information from the Defendants.  To the best of my knowledge, the Defendants and/or their counsel are in possession of a copy of that letter dated April 16, 2004.

In July, 2004, I traveled to Worcester by car after stopping in Borne Beach Island, New Jersey.  I met with Peter, John and Dennis at the Sportsplex where they told me how wonderful it was going and I asked about my $1,000 per month which I was told they would be

      d.   the substance of said communication.

ANSWER:

Pursuant to Rule 33(c), I refer to correspondence between my counsel and the Defendants which are, presumably, in the custody, control and possession of the Defendants and/or their counsel.

In addition, over the course of the period covered by this action I have had numerous conversations with the Defendants, principally with John Natoli and Peter Natoli. While I cannot presently recollect specific dates, I can categorize the conversations as: (i) those prior to my August 2003 trip to Worcester; (ii) those during my visit in August, 2003; and (iii) those occurring after the August, 2003 visit. To the best of my recollection, the nature of those conversations were as follows:

Prior to August, 2003: In that I had a relationship with the individual Defendants that extended more than 30 years, I had spoken with Peter Natoli sometime after May 20, 2001, the date on which I was seriously injured in a motor vehicle accident involving a motor vehicle striking me as a pedestrian. During the course of my hospital stay and rehabilitation, I spoke with Peter Natoli on a number of occasions. These conversations occurred over the phone.

As I recall, during the month of June 2003, within days of when I received in excess of $200,000 as a result of a settlement agreement I reached in connection with the car accident in which I was involved, I had a telephone conversation with Peter Natoli. I was told that Peter Natoli was building an indoor sports facility located in the Worcester area that he had started with Dennis Natoli and John Natoli. I was also told that in addition to the Natolis, there were two other persons who had made investments of $50,000 for an ownership interest. Peter Natoli told me that they were seeking additional investors and that I could have the same terms as the two other investors for a $50,000 investment.

Peter Natoli told me that they had prepared some written material that included a description of the sports facility, along with financial projections. I asked to see the material and was told it would be promptly sent to my home.

I told Peter Natoli that while I had access to some money due to the settlement, I needed to obtain a monthly return of at least $1,000 on any funds I would invest not later than 6 months after the investment. In response, Peter and John Natoli told me that I would

sending.  I was given $300.

The most recent conversation I had was, to the best of my recollection, within the last month.  That conversation was with Peter Natoli during which I was informed that the Defendants had incurred substantial legal fees in connection with this proceeding.

9.    State the name, residential address and business address of each person having knowledge of discoverable facts pertinent to the allegations contained in Plaintiff's Complaint.

ANSWER:

James W. Vail – To the best of my knowledge, his home address is 12 Magill Avenue, Grafton Ma 01519.

Joseph R. Teixeira – Unknown

Peter Natoli, 406 Treasure Island, Webster, MA

John Natoli, 13 Gilbert Way, Millbury, MA 01527

Dennis Natoli, 370 South Street, Auburn, MA 01501

Steven Richer.  To the best of my knowledge, his office address is 110 Elm Street, Millbury, MA.

Peg Wells, 122 Parkway Court, Greenacres, FL  33413

Dawn Brennes and her husband,  Address Unknown

Susan Natoli, To the best of my knowledge, her address is 13 Gilbert Way, Millbury, MA 01527

Eric Stokes.    Unknown

10.    Itemize in detail any and all damages or financial claims which you allege against the

Defendants.

ANSWER:

I have been deprived of the return of the $100,000 I transferred to the Defendants

from the date of the demand of the return of the funds to the present; I have also been deprived of the use of the money I transferred from the date of the transfer to the present, the use of which would have conservatively generated a rate of return of 10% per annum.  I have also been damaged economically by having to engage counsel, experts in accounting, court costs and miscellaneous expenses.

11.   State each and every fact which supports the allegation that the Defendants "have been engaged in conduct which tends to prejudicially affect the business purposes and standing of ASP"

ANSWER:

   To the best of my knowledge, by way of illustration, defendants have failed to maintain timely and accurate business records related to among other things, revenue generated, have failed to make timely filings of tax returns and required business certificates, have failed to provide minority owners with material information related to the contractual obligations of the business (for example, reports concerning the status of the business/ obligation to creditors), and regarding the management of the company.

12.   State each and every fact which supports the allegation that the Defendants have "wrongfully excluded and continue to wrongfully exclude Plaintiff from participation in the management of ASP".

ANSWER:

   By way of illustration, but not limitation, I was not provided with timely notice of meetings of the owners at which, apparently, corporate business was conducted, I was not provided with the information referenced in the answer to the preceding interrogatory.

13.   State each and every fact which supports the allegation that the Defendants "have, or are currently, engaged in discussions which a third party or parties concerning the sale of certain assets of ASP".

ANSWER:

   During the course of a telephone conversation with Peter Natoli, I was informed that an outside party had expressed an interest in acquiring an interest in the Sportsplex and that and that I would get approximately $106,000 from the sale of the building and Sportsplex.

   SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS
   DAY OF _April 25_____, 2006.

                              Christian Schwerk

CHRISTIAN SCHWENK

_Christian Schwenk_

april 25, 2006

# EXHIBIT B



# OWNERSHIP PURCHASE AGREEMENT

THIS AGREEMENT is made and entered into this 23 day of june, 2003, by and between John, Peter & Dennis Natoli, ("Seller") and Christepher B Schwₐnk, ("Purchaser"):

WHEREAS, the Seller is the record owners of Auburn SportsPlex LLC, ("Corporation"), a Massachusetts corporation; and

WHEREAS, the Purchaser desires to purchase Five Percent ownership of Auburn SportsPlex LLC and the Seller desires to sell Five percent of ownership, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the investment into the Corporation for Five Percent ownership, it is hereby agreed as follows:

1. PURCHASE AND SALE: Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell to the Purchaser this document that certifies investment ownership of Five percent of Corporation in consideration of the purchase price set forth in this agreement. This certificate representing ownership of Five Percent of all Assets, Net Profits and any Beneficial entities of the Corporation, shall be duly endorsed and accompanied by appropriate signatures of transfer powers duly executed in blank, in either case with signatures guaranteed in the customary fashion, and shall have all the necessary signatures affixed thereto at the expense of the Seller. The closing of the transactions contemplated by this Agreement ("Closing"), shall be held at  5 Saint Mark St, on June 30, 2003 , at 6pm , or such other place, date time as the parties hereto may otherwise agree. ᵀᵀᴼ ᴬᵘᵍ 20, 2003 ᴰᵃᵛᵉ

2. AMOUNT AND PAYMENT OF PURCHASE PRICE.  The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3. REPRESENTATIONS AND WARRANTIES OF SELLER.  Seller hereby warrants and represents:

(a) Organization and Standing.  Corporation is a corporation duly organized, validly exhisting and in good standing under the laws of the state of Massachusetts and has the corporate power and authority to carry on its business as it is now being conducted.

(b) Restrictions of Ownership.
i. The Seller is not a party to any agreement, written or oral, creating rights in respect to the Corporation in any third person or relating to the voting of the Corporations Powers.
ii Seller is the lawful owner of the Corporation, free and clear of all security interests, liens, encumbrances, equities and other charges.
iii There are no existing warrants, options, ownership purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the Corporation.

4. REPRESENTATIONS AND WARRANTIES OF SELLER AND PURCHASER. Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller, Purchaser or the Corporation which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

5. GENERAL PROVISIONS

(a) Entire agreement. This Agreement (including the exhibits hereto and any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

(b) Sections and Other Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning orinterpretation of this Agreement.

(c) Governing Law. This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Massachusetts. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Worcester County, State of Massachusetts. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written.

Signed, sealed and delivered in the presence of:

By:_____ John V Natoli

By:_____ Peter Natoli

By:_____ Dennis Natoli

By:_____ Christian B Schwenk SS#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

By:_____

EXHIBIT "A"

AMOUNT AND PAYMENT OF PURCHASE PRICE

(a) Consideration.  As total consideration for the purchase and sale of the Corporation( 5) Five Percent ownership, pursuant to this Agreement, the Purchaser shall pay to the Seller the sum of One Hundred Thousand Dollars ($100,000.00), such total consideration to be referred to in this Agreement as the "Purchase Price".

(b) Payment.  The Purchase Price shall be paid as follows:

i.  The sum of One Hundred Thousand Dollars ($100,000.00) to be delivered to Seller at Closing, no later than June 30, 2003.

(c) Refund of Payment.  If for any reason within the first twelve months of this agreement, the Purchaser decides to sell his ownership of the Corporation, a notice in writing to Sellers only, the sellers will refund Purchasers, within and no longer than Ninety Days of such delivered notice.

(d) Liabilities.  The Purchasers Liabilities are limited to the investment of $100,000.00.


By:_____    John V. Natoli

By:_____    Peter Natoli

By:_____    Dennis Natoli

By:_____    Christopher B Schwank  CHRISTIAN B. Schwenk

By:_____

# Exhibit C

**Washington Mutual Bank, FA**

CHRISTIAN SCHWENK
COURTNEY J SCHWENK-BENEFICIARY
1015 OLIVE TREE CIR
WEST PALM BEACH FL 33413

## Outgoing Wire Transfer Notice

Dear Valued Customer:
We are writing today to let you know that the following transaction(s) have posted to your account. If you have questions, please call us at 1-800-788-7000. We're here 24 hours a day, seven days a week, and our goal is to provide you with the best customer service possible. Thanks for banking with Washington Mutual.

| | |
|---|---|
| Transaction Date: | 07/21/2003 |
| Account: | 092-419928-6 |
| Washington Mutual Processing Site: | Stockton |
| Wire Transfer Domestic Withdrawal : | 100,000.00 - |
| Wire Transfer Fee: | 25.00 - |
| | |
| FEDplus/PAYplus Reference: | 20030721135638MT |
| Fed Reference: | 20030721L1LFAS3C006346 |
| | |
| Beneficiary: | AUBURN SPORT PLEX LLC |
| Other Beneficiary Information: | PETER NATOLI |
| | |
| Sender Name: | WASHINGTON MUTUAL BANK FA (ASB) |
| Sender ABA: | 321180748 |
| Sender Reference: | 1671.0721 |

By Order of/Originating Party:    CHRISTIAN SCHWENK

EXHIBIT 3
Schwenk
Mc CARTHY REPORTING SERVICE
5-4-06 10

## Washington Mutual

### WIRE TRANSFER APPLICATION

### FC/CBC Information

| Company Number | FC/CBC | FC/CBC Number | FC/CBC Name | | FC/CBC Phone Number |
|---|---|---|---|---|---|
| 002/003-WMB,FA | FC | 1671 | Greenacres | | 561-812-0601 |

| Check one: ☒ One Time Wire | ☐ Recurring Wire | Template # _____ | Wire Date 7/21/2003 |
|---|---|---|---|

| Final Destination: ☐ Domestic | ☐ Foreign | Hold/Restraint exists on Account Yes ☐ No ☒ |
|---|---|---|
| | | Close account? Yes ☐ No ☒ |
| | | Available Balance prior to wire $260,403.75 |

### Originator/Account Authorized Representative(AAR) - Requestor

| ☒ Account Number To Debit or ☐ GL/RC | Auto Rec Ticket # | |
|---|---|---|
| 0924199286    Choose One: | | |
| Originator Name | Orig. SSN/EIN/Passport | AAR Name | AAR SSN/EIN/Passport |
| Christian Schwenk | 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 | | |

| Originator Phone Number | Originator Street Address | City | State | Zip | Country |
|---|---|---|---|---|---|
| 561-649-2931 | 1015 Olive Tree cir | WPB | FL | 33413 | USA |

Obtain ID of person presenting transaction, whether Authorized Representative or Owner/Signer on the Account:
ID1 FL  S520-100-51-174-0            ID2: Wamu visa 07/05

| Domestic Transfer | Foreign Transfer in US Dollars | Foreign Transfer in Foreign Funds | | |
|---|---|---|---|---|
| Transfer Amount | Transfer Amount $ | Foreign Currency Type: | | |
| $100,000.00 | Fee: $ | Current Sell Rate: | (Attach FFSD Page 283) | |
| Fee: | | Amount Foreign Currency: | | |
| $25.00 -FL, NY | | Fee: $ | | |

### Final Bank Destination (Beneficiary's Bank), Beneficiary  (Must Complete All Areas, Unless Otherwise Noted)

| ABA Routing #: | SORT/SWIFT Code: 011075150 |
|---|---|
| Final Bank Name: Soveirgn | |
| Final Bank Street Address (Optional): | |

| Final Bank City: Auburn | State: MA | Zip: 01501 | Country: USA |
|---|---|---|---|

Beneficiary Name (Customer, Escrow/Title, Investment Company): Auburn Sport Plex LLC

| ☐ Account #: 59904937261 | ☐ Pay Upon Proper ID |
|---|---|

Beneficiary Street Address (No P.O. Box):

| Beneficiary City: Auburn | State: MA | Zip: 01501 | Country: USA |
|---|---|---|---|

Other Beneficiary Information (If any): Peter Natoli

### Correspondent/Intermediary Bank (If Final Bank Destination above is not a Correspondent Bank) Do Not Use For Foreign Currency Wires

| Intermediary Bank Name: | ABA/Acct #/ or SORT/SWIFT Code: |
|---|---|
| Intermediary Bank Street Address: | |

| Intermediary Bank City: | State: | Zip: | Country: |
|---|---|---|---|

Instructions for Intermediary Bank (if any):

I authorize the above mentioned Bank to transfer funds as shown on this Wire Transfer Application (for Funds Transfer) ("Application"). Undersigned represents and warrants by signing below that if he/she is not making this Application on his/her own behalf, he/she has been identified above as an Account Authorized Representative ("AAR") and that AAR is authorized to make such Application on behalf of Originator as authorized in a Wire Transfer Agreement executed by Originator or other documentation acceptable to the Bank, in its discretion. Undersigned, on his/her own behalf and if he/she is an AAR, on behalf of Originator, agrees: 1) to the terms and conditions herein; 2) that this Application is made pursuant to and is subject to the terms of the Account Disclosures and Regulations Relating to Deposit Accounts and Other Services and Electronic Fund Transfer Agreement and Disclosures and any addenda thereto ("Account Disclosures"), receipt of which is acknowledged upon signature below, to the extent such is not superseded by the Wire Transfer Agreement, if applicable, and the terms of the Wire Transfer Agreement, if such has been executed by Originator; and, 3) that (a) disputes arising hereunder are subject to mandatory binding arbitration in accordance with the terms of the Account Disclosures and, if applicable, the Wire Transfer Agreement (b) any right to trial before a judge or jury is waived, and (c) claims must be made in accordance with the provisions of and within the time limits set forth in said Account Disclosures and, if applicable, Wire Transfer Agreement. If this Application is received after the Bank's cutoff time for Transfers on the Wire Date, the Transfer will be processed the next Business Day. If the Transfer is to be made in foreign funds, the rate and amount will be based upon the then current rate of exchange on the Business Day the wire is processed and may differ from the rate quoted on this Application.

| _____ | _____ |
|---|---|
| Originator/Account Authorized Representative Signature | Date |

### Approval Confirmation (2 authorized signatures required)

| Accepted/Prepared By (Print Name): Milfrid Nunez | 2:41 PM | Wire Transfer Department | Time: |
|---|---|---|---|
| Signature: | Date: 7/21/2003 | Confirmed by/with: | |
| Approved By (Print Name): Tray Dunklin | 2:41 PM | Originator/AAR - Requestor | Time: |
| Signature: | Date: 7/21/2003 | Confirmed by/with: | |

30717 (5/03) wiretrsf.doc                    AFTER FAX CONFIRMATION IS COMPLETE - FILE APPLICATION

# EXHIBIT D

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2                       CENTRAL DIVISION

 3      CHRISTIAN SCHWENK,
                Plaintiff
 4
        VS.                        C.A. NO. 05 CV 40071-FDS
 5
        AUBURN SPORTSPLEX, LLC,
 6      DENNIS NATOLI, JOHN NATOLI
        and PETER NATOLI,
 7              Defendants

 8

 9

10         DEPOSITION of CHRISTIAN B. SCHWENK, taken at

11      the request of the defendants, pursuant to Rule

12      30 of the Federal Rules of Civil Procedure,

13      before Michael Gruber, a notary public in and for

14      the Commonwealth of Massachusetts, on May 4,

15      2006, commencing at 9:15 a.m., at the offices of

16      Pojani, Hurley, Ritter & Salvidio, P.C., 446 Main

17      Street, Worcester, Massachusetts.

18

19

20

21      A P P E A R A N C E S:

22      FOR THE PLAINTIFF:

23      DOUGLAS L. FOX, ESQ.
        SHUMWAY, GIGUERE & FOX, ESQS.
24      19 Cedar Street
        Worcester, Massachusetts 01609
```

ORIGINAL

1    wasn't there then. It must be prepared ahead of

2    time. I didn't even get there then.

3         Q.    In paragraph number 1, which says

4    "purchase and sale", the date June 30 appears to

5    be crossed out with a black pen.

6         A.    Correct.

7         Q.    Who crossed it out with a black pen?

8         A.    I made the correction, I believe.

9         Q.    So you crossed out June 30, 2003 with

.0   a black pen.

.1        A.    Correct.

.2        Q.    Then underneath there somebody wrote

.3   in the date July --

.4        A.    I don't know why that got written in,

.5   but I crossed that out, too.

.6        Q.    Who wrote in the July date?

.7        A.    I don't remember.

.8        Q.    Whose handwriting is it?

.9        A.    I can't tell. Maybe I wrote it in. I

20   don't know why, but I just don't, you know -- I

21   wasn't there July 18, either.

22        Q.    You'll agree with me that the July

23   date is written in in black pen, correct?

24        A.    Yeah.

1          Q.      Then the July date is crossed off in

2     blue pen.

3          A.      Right.

4          Q.      Who crossed off the July date?

5          A.      I don't remember. I probably did. I

6     don't remember.

7          Q.      Somebody wrote in the date August 20,

8     2003. Whose handwriting is that?

9          A.      That's mine, because that's the

10    correct date that I was there signing the thing.

11         Q.      And so you wrote, in the blue pen,

12    August 20, 2003.

13         A.      And the word "done".

14         Q.      The word what?

15         A.      "Done". Isn't that "done"? No, that's

16    initials. That's something else.

17                 I don't know what that is. I can't

18    remember. I mean, I remember I wrote that --.

19         Q.      Okay. Just for point of clarification,

20    just to the right of the August 20, 2003 date in

21    blue pen, there appears to be a writing in blue

22    pen right to the right of the date. Do you see

23    that?

24         A.      Yes.

**EXHIBIT E**

EXHIBIT
MC CARTHY REPORTING SERVICE

April 16, 2004

Peter, John & Dennis,

This is a very unfortunate and unpleasant letter to have to write, but I have left you Peter numerous phone messages and have asked Dennis twice to have you call me to no avail.

As of today April 16, 2004 I have not recieved a shread of information or data concerning the Sportsplex. This is absoultly unacceptable and no fair.

When I became involved in this project, I only did so based on the friendship and trust I have in Peter. Originally I was considering investing $9,000.00 in the Sportsplex. Based on circumstances that occured. You needed more and this number doubled! At the time and since I stated that I could go six months without seeing a return on monies but then would need a monthly return as I am disabled and would need it to live.

2.

Again, based on my trust in you I did not challenge any of the factors involved, and did not make it difficult or costly by involving attorneys. Instead you needed and I wired $100,000.00 into your account on July 21, 2003. I then visited in August and we signed the agreement, the dates of which haven't been changed and are as follows June 23, 2003 (entered date) and June 3?, 2003 (Closing transaction).

Bottom line is I am not, nor ever have been in a position to wait for a "big payoff" down the road, and again I made this very clear when I sent the money.

I am at the point of regretfully having to excute the refund clause in the agreement, if there are not drastic changes and remedies enacted as I simply can not survive without steady monthly income.

I fully believe in this project and business as I know there are areas that haven't been explored, such as photography that will be extremely profitable.

With all the different teams from various Sports Playing in the Dome it should be easy to do $250,000.⁰⁰ - $500,000.⁰⁰ gross in Photo Packages with at least a 60% net Profit. There are many ways to get the Manufacturers to Supply any needed equipment without a Cost Outlay.

I know my Personal finances are of no interest or Concern to you, but I am Presently Coming up very Short. February 21, 2004 was Six months. It is now 9 months. I had hoped to drive up to Orlando a few weeks ago and address some of this with you John, but 2 Messages to your cell Phone went unanswered.

I do not like how uncomfortable you are all making me feel and I must state again the reason this deal was done as relaxed as it was, only was because of my trust and friendship with Peter and Dennis and an almost 30 year relationship with John.

This issue must be resolved immediately, figure and work Something out, or I will invoke the refund Clause.

Sincerly, Chris Schook

561-649-8419
561-329-0959 P.M.

1015 Olive Tree Circle
Greenacres Fl

EXHIBIT F

## Law Offices of Paul E. Linet

A Professional Corporation

Post Office Box 533
Acton, MA 01720-0533

Tel: (978) 264-9600 • Fax: (978) 264-9090 • URL: http://www.linetlaw.com

August 19, 2004

Peter Natoli
Auburn Sportsplex, LLC
5 St. Mark Street
Auburn MA 01501

### Demand for Refund of Payment on Behalf of
### Christian Schwenk

Dear Mr. Natoli:

As I informed you during our telephone conversation of August 18, 2004, this firm represents Christian Schwenk, a resident of West Palm Beach, Florida and responds to your request for a written statement concerning the information that Mr. Schwenk has asked this office to obtain from Auburn Sportsplex, LLC ("the LLC").

In connection with Mr. Schwenk's ownership interest in the LLC, this office respectfully requests the opportunity to inspect and copy the following documentation:

1. A current list of the full name and address of each member of the LLC;
2. A copy of the Certificate of Organization and any certificates of amendment and annual reports filed with the Commonwealth of Massachusetts subsequent to July 12, 2002;
3. Copies of the LLC's federal and state income tax returns filed since the LLC's inception;
4. Copies of any written operating agreements currently in effect;
5. Copies of all financial statements of the LLC prepared since its inception;
6. A written statement of the amount of cash and a description and statement of the agreed value of the other property or services contributed by each member of the LLC;
7. A written statement regarding the right of any member to receive distributions from the LLC.

Under applicable law, the foregoing records are mandated to be kept by the LLC and, upon proper request, are further required to be made available during ordinary business hours. Please provide the undersigned with a convenient time during the next 10 days when the documentation will be available for

**Law Offices**
## Paul E. Linet, P.C.

inspection at the LLC's offices. We shall than make arrangements to review the documentation and make copies, at our expense.

As you know, in a letter dated April 16, 2004 (a copy of that correspondence is enclosed hereto and incorporated by reference herein), Mr. Schwenk stated that he had not received data regarding the operation of the LLC. You will also note in his correspondence dated April 16, 2004, Mr. Schwenk highlighted his concerns and expressed his intent to invoke the refund clause set forth in Exhibit "A" to the Ownership Purchase Agreement (copy enclosed). **THEREFORE, PLEASE TAKE NOTE THAT MR. SCHWENK HEREBY INVOKES CLAUSE (c) "Refund of Payment" and demands refund of his investment. Pursuant to that provision in Exhibit A, we fully expect that the arrangements to sell Mr, Schwenk's ownership interest in the LLC will be completed within ninety days.**

I contacted Auburn Sportsplex, LLC by telephone on August 18, 2004 in an effort to amicably resolve any outstanding issues involving the parties. It is still our expectation that such a resolution may be achieved. In that you requested a written communication identifying the material we currently seek to review, we have complied with your request.

Should you have any questions concerning the substance of this correspondence, please contact the undersigned as soon as possible. We look forward to receiving your response so that we can proceed to rectify any and all open issues.

Sincerely yours,
Law Offices of Paul E. Linet, P.C.
Attorney to Christian Schwenk

By: _____
Paul E. Linet

PEL:lom
Enclosures
Via Overnight Courier
DHL/ABX 5361451141

Copy to: C. Schwenk