UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTIAN SCHWENK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. |
| v. | ) | 05-40071-FDS |
| | ) | |
| AUBURN SPORTSPLEX, LLC, DENNIS | ) | |
| NATOLI, JOHN NATOLI, and PETER | ) | |
| NATOLI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

SAYLOR, J.

This is a dispute over an investment in a limited liability company that owns an indoor

sports facility in Auburn, Massachusetts.  Plaintiff Christian Schwenk entered into an agreement

with defendants Dennis, John, and Peter Natoli to invest $100,000 in Auburn Sportsplex, LLC in

exchange for a 5% ownership interest in the company.  Plaintiff contends that he never received

an appropriate certificate of ownership, financial information regarding Auburn's operation, or

monthly dividend payments.  As a result, plaintiff attempted to exercise the buyback option

provided in his contract with Auburn.  When the Natolis refused to refund his investment, he

brought this action against the Natoli brothers and Auburn, alleging (1) violation of federal

securities laws, (2) breach of contract, (3) breach of fiduciary duty, (4) conspiracy, and (5)

violation of Massachusetts' consumer protection statute, Mass. Gen. Laws ch. 93A.

Defendants have moved for partial summary judgment on the breach of contract and

Chapter 93A claims.  For the following reasons, the motion will be granted.

### I. Factual Background

The facts are set forth in the light most favorable to the plaintiff.

Auburn Sportsplex, LLC is a limited liability company organized under Massachusetts law. Auburn is owned primarily by Peter Natoli and his brothers, Dennis and John Natoli. Peter Natoli is the company's sole manager and president.

In June 2003, Peter Natoli contacted Christian Schwenk about an investment opportunity in Auburn. Schwenk, who was a resident of Florida, had known the Natolis for more than 30 years. Defendants knew that Schwenk had been in a serious car accident and expected to receive funds from a related personal injury lawsuit. In the package of information defendants sent plaintiff, Peter Natoli stated that an investment in Auburn was "protected" by real estate and would provide plaintiff a return of 18% to 30% on his investment.

The parties entered into a Purchase Agreement under which plaintiff agreed to purchase 5% of Auburn for $100,000. The parties dispute, however, when the Purchase Agreement became effective.

The first line of the contract reads as follows: "THIS AGREEMENT is made and entered into this 23 day of june, 2003 [*sic*], by and between John, Peter & Dennis Natoli, ('Seller') and Christian B. Schwenk, ('Purchaser')." Paragraph 1 of the contract provides:

> PURCHASE AND SALE: Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell to the Purchaser this document that certifies investment ownership of Five percent of Corporation in consideration of the purchase price set forth in this agreement. . . . The closing of the transactions contemplated by this Agreement ("Closing"), shall be held at 5 Saint Mark St [*sic*], on June 30, 2003, at 6 pm, or such other place, date [and] time as the parties hereto may otherwise agree.

The date "June 30" in Paragraph 1 is crossed out in ink on the executed copy. Next to it is

handwritten "July 13," also crossed out in ink, and next to that is "August 20, 2003," along with three sets of initials. The last line of the contract is as follows: "IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written."[1]

According to plaintiff, he crossed out the closing date of "June 30" by hand and wrote "July 13" in its place. He later crossed out "July 13" and wrote "August 20, 2003" by hand on the contract. Plaintiff contends he did not sign the contract until August 20, 2003, when he visited defendants in Massachusetts.[2]

On July 21, 2003—after the original closing date of June 30, but before the new closing date of August 20—plaintiff wired $100,000 to defendants' bank account. According to plaintiff, he never received a certificate reflecting his investment.

The Purchase Agreement contains a refund of payment clause that gives plaintiff the opportunity to sell back his ownership of the company to defendants "for any reason within the first twelve months of this agreement." The clause explains that upon giving written notice of his intent to sell, defendants will refund plaintiff's investment within 90 days.

On April 16, 2004, plaintiff requested information regarding the operations of the business and reminded defendants to send him monthly dividend payments. Plaintiff explained that unless there were "drastic changes and remedies enacted," he would exercise the Purchase Agreement's

---

[1] Exhibit A to the contract states, among other things, that the purchase price is to be delivered by the Purchaser to the Seller "at Closing, no later than June 30, 2003." Exhibit A contains no handwritten alterations.

[2] Defendants contend that plaintiff signed the contract on June 23, 2003. They also contend that they signed it in June.

refund provision.[3]

On August 19, 2004, plaintiff sent defendants a second letter in which he requested that defendants produce a number of documents relating to the ownership and operation of the business. He also stated that he was invoking the Purchase Agreement's refund clause and demanded payment within ninety days. Defendants did not refund his investment and denied him access to the requested records. Plaintiff then sent a Chapter 93A demand letter on December 9, 2004, but did not receive a written response.

Plaintiff filed this action on May 11, 2005, alleging that defendants violated federal securities laws, breached the Purchase Agreement, breached their fiduciary duties, committed a conspiracy, and violated Chapter 93A. On June 22, 2006, defendants moved for partial summary judgment on the breach of contract and Chapter 93A claims.

## II.    Analysis

### A.    Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *quoting Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). The burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

---

[3] In his letter, plaintiff said that he signed the Purchase Agreement in August 2003, but that June 23, 2003 was the "entered date" and June 30, 2003 was the "closing transaction."

favor.  *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).

Once the moving party has satisfied its burden, the burden shifts to the non-moving party

to set forth specific facts showing that there is a genuine, triable issue.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986).  The non-moving party cannot merely rest on its pleadings since when

"a party fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party bears the burden of proof at trial, there can no longer be a

genuine issue as to any material fact: the failure of proof as to an essential element necessarily

renders all other facts immaterial and the moving party is entitled to judgment as a matter of law."

*Smith v. Stratus Computer, Inc.*, 40 F.2d 11, 12 (1st Cir. 1994).

## B.    Breach of Contract Claim

Plaintiff contends that defendants breached the Purchase Agreement by refusing to buy

back his investment in Auburn when he attempted to invoke the contract's "refund of payment"

provision on August 19, 2004.[4]  Defendant contends that plaintiff's request was untimely, because

it was made more than one year after the effective date of the contract.

The Purchase Agreement states that the right to a refund may only be exercised "within

the first twelve months of this agreement."  There is no apparent dispute that the twelve-month

period began on the date the contract became effective.  The parties dispute, however, what that

date was.  Defendants contend that the contract became effective on June 23, 2003, the date that

the contract was "made and entered into," according to its terms.  Plaintiff contends that the

contract did not become effective (1) until the closing date, which was August 20, or (2) until he

---

[4] Plaintiff makes no other claim for breach of contract, although as noted he has asserted other claims, including a claim for securities law violations and a claim for breach of fiduciary duty.

signed it, which he says also occurred on August 20.[5]

When a contract is free from ambiguity, it must be interpreted according to its plain terms and "usual and ordinary sense." *Suffolk Const. Co., Inc. v. Lanco Scaffolding Co., Inc.*, 47 Mass. App. Ct. 726, 729 (1999). Contract language is considered ambiguous if its terms "are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." *Id., quoting Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989). However, ambiguity is not created merely because a controversy exists between the parties and each favors an interpretation that is contrary to the other's. *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995).

As noted, the first line of the contract states that the agreement "is made and entered into this 23 day of june, 2003 [*sic*]," and the last line states the agreement "has been executed by each of the individual parties hereto on the date first above written." A "closing date" was also provided, originally June 30 and later changed to August 20. There are thus two dates set forth in the contract: the "made and entered" date (June 23) and the "closing" date (August 20).

Under Massachusetts law, the phrase "made and entered" generally indicates the date that a contract became effective. *See Suffolk Construction*, 47 Mass. App. Ct. at 729-30 (holding that the terms "made" and "executed" unambiguously indicated the contract's effective date, and noting that there is no distinction for that purpose between the terms "executed" and "entered"); *see also Greater Boston Cable Corp. v. White Mountain Cable Constr. Corp.*, 414 Mass. 76

---

[5] There is a genuine issue of disputed material fact as to whether plaintiff signed the contract on August 20 (defendants contend that he signed it on June 23). Because plaintiff is the party opposing summary judgment, the Court will assume for purposes of its analysis that plaintiff did not sign the contract until August 20.

(1992).

Plaintiff attempts to avoid that result by contending that the contract is not effective until the "closing date." That argument, however, would render the "made and entered" date entirely superfluous, and thus violate the principle that agreements are to be interpreted so that every word is given force and meaning. *See Starr v. Fordham*, 420 Mass. 178, 190 (1995). Here, the contract clearly and unambiguously sets forth dates for two different events: (1) the date on which the contract was "made and entered" and (2) the date on which the closing was to occur—that is , the date on which the parties were to fulfill their principal obligations under the contract (for the plaintiff, delivering the purchase price, and for the defendants, delivering the ownership certificate). The clear language of the contract thus provides that it became effective on June 23, 2003.

Plaintiff further contends that he did not sign the contract until August 20, and that it therefore could not have been effective before that date. Even assuming, however, that he did not sign it until August 20, the result is the same. While a party generally executes a written contract with a signature, "[i]t is established that a signature is not always necessary to create a binding agreement." *Federal Deposit Ins. Corp. v. Refco Group, Ltd.*, 989 F. Supp. 1052, 1069 (D. Colo. 1997) (internal citations omitted). The purpose of a signing a contract is to demonstrate mutuality of assent, which may also be shown by the conduct of the parties. *Id.; see also Haufler v. Zotos*, 446 Mass. 489, 499 (2006) (recognizing that party assented to escrow agreement by holding deeds, mortgage, and sum of money even though he did not sign agreement); *Samincorp South American Min. & Mer. Corp v. Lewis*, 337 Mass. 298, 302 (1958) (rejecting defendants' objection that contract was not effective because they did not sign it where their conduct showed

they accepted its terms).

Here, plaintiff demonstrated his assent to the Purchase Agreement by wiring $100,000 to defendants on July 21, 2003, allegedly before he formally signed the contract.  Furthermore, plaintiff affixed his signature on August 20 to a contract that clearly stated that it was "made and entered" on June 23.  The parties never modified that date (unlike the closing date, which was changed), and plaintiff does not even contend that he intended or attempted to do so.

Accordingly, because the Purchase Agreement is not ambiguous and the contract's effective date clearly was June 23, 2003, plaintiff's ability to exercise his "refund of payment" right had expired by August 2004, more than twelve months after the parties entered the contract. Summary judgment is therefore appropriate on the breach of contract claim.

### C.    Chapter 93A Claim

Defendants also contend that they are entitled to summary judgment on the Chapter 93A claim because the statute does not apply to business disputes between partners or joint venturers. Plaintiff responds that his claims are actionable under Chapter 93A because the statute specifically applies to the sale of "any security."

Chapter 93A, § 11 provides as follows:

> Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice declared unlawful by section two . . . may bring an action in the superior court . . . .

The definition of "trade or commerce" under the statute includes "the advertising, the offering for sale, rent or lease, the sale, rent lease or distribution of . . . any security." *Id.* at § 1(b).  "Security" is defined broadly under Massachusetts law to include any stock.  Mass. Gen.

Laws ch. 110A § 401(k).

The Supreme Judicial Court has construed Chapter 93A as applying to actions that "arise between discrete, independent business entities," but not to transactions between joint venturers or fiduciaries within a single company.  *Szalla v. Locke*, 421 Mass. 448, 451 (1995); *see Zimmerman v. Bogoff*, 402 Mass. 650, 662 (1988) (dispute between owners of a close corporation held to be  "principally private in nature," and therefore did "not fall within the purview of" Chapter 93A); *see also Riseman v. Orion Research, Inc.*, 394 Mass. 311, 313-14 (1985) (Chapter 93A does not apply to disputes between corporate shareholders and the corporation concerning the internal governance of the corporation).

The fact that the dispute between the partners or joint venturers involves the transfer of a "security" of the enterprise does not change the analysis.  According to the First Circuit, Massachusetts law requires "an independent analysis of whether the transaction involved had a public aspect, even where the subject matter of the transaction [there, the sale of securities] is included in the definitional section of the statute."  *Ansin v. River Oaks Furniture*, 105 F.3d 745, 760 (1st Cir. 1997).[6]

Plaintiff attempts to differentiate his case from the foregoing authorities in two ways. First, he contends that he had a merely passive role in the company as an investor, and was not active in the management of the business.  That fact, however, appears to provide no basis for any

---

[6] In *Ansin*, investors in a close corporation sued the corporation and two of its officers and directors under Chapter 93A after being induced to sell their shares ten months before a successful initial public offering.  Without reaching the question of whether the subject matter of the transaction was considered "trade or commerce," the court found that the suit was "largely premised on [defendant corporation's] status as a close corporation," and held that there was "no suggestion that these events could have or did transpire in a public market situation."  *Id.*, 105 F.3d at 761.  Therefore, relief under Chapter 93A was unavailable.

distinction under the statute.  *See, e.g., Szalla,* 421 Mass. at 449-50 (plaintiff provided the labor

and day-to-day management while defendant supported the business financially); *Ansin*, 105 F.3d

at 749-52 (plaintiffs were mere investors).  Second, citing *In re Curran*, 157 B.R. 500 (Bankr. D.

Mass. 1993), plaintiff argues that even if he cannot prevail on his Chapter 93A claim as it relates

to defendants' conduct once the Purchase Agreement was entered, he can still seek relief for

events that occurred prior to the contract.[7]  It is true that the bankruptcy court in *Curran*

permitted limited partners to pursue a Chapter 93A claim against general partners solely as to

events that occurred before the plaintiffs were partners.  That holding, however, is clearly at odds

with the opinion of the Supreme Judicial Court in *Szalla*—decided after *Curran*—in which the

court specifically rejected the argument that Chapter 93A applies to activities of partners in

coming together and forming a business enterprise.  421 Mass. at 452 ("The association between

the plaintiff and the defendant in the interests of forming a business venture together is not the

kind of commercial transaction regulated by the statute.").

    Although the entity in this matter is a limited liability company, rather than a partnership or

joint venture, the Court has little difficulty concluding that Chapter 93A does not apply to this

dispute.  Schwenk and the Natolis were effectively partners in a business venture, and the dispute

concerns their respective rights and relationships in that venture.  Summary judgment as to the

Chapter 93A claim is therefore appropriate.

---

    [7] Of the five acts or omissions on which plaintiff bases his Chapter 93A claim, two relate to pre-contractual activities:  (1) defendants' purchase of land for Auburn from a trust in which two of the individual defendants were trustees and all three were beneficiaries and (2) certain "questionable" financial transactions between Auburn and the trust.

**III.    <u>Conclusion</u>**

For the reasons set forth above, defendant's motion for partial summary judgment as to counts II (breach of contract) and V (Chapter 93A) of the First Amended Complaint is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: March 12, 2007